**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**KRISTAN SEIBERT**                                                                   **PLAINTIFF**

**V.**                                        **CIVIL ACTION NO. 1:14-CV-188-KS-MTP**

**JACKSON COUNTY, MISSISSIPPI,** *et al.*                          **DEFENDANTS**

<u>MEMORANDUM OPINION AND ORDER</u>

For the reasons below, the Court **grants in part and denies in part** Defendants' Motions for Summary Judgment [62, 64].

## I. BACKGROUND

This is a sexual harassment case. Plaintiff is a deputy in the Jackson County Sheriff's Department. She alleges that the County's former Sheriff, Michael Byrd, sexually harassed her for months. Specifically, she claims that Byrd began making unwanted sexual advances toward her in 2012, including touching of intimate body parts, lewd comments, and repeated requests for her to have sex with him. She alleges that Byrd threatened to demote her if she did not comply with his requests. According to Plaintiff, this behavior occurred on a near-daily basis for months.

Plaintiff filed this suit against Byrd in his individual and official capacities and Jackson County, Mississippi. She asserted claims under Title VII, Section 1983, and state law. Both Defendants filed Motions for Summary Judgment [62, 64], which the Court is prepared to address.

## II. STANDARD OF REVIEW

Rule 56 provides that "[t]he court shall grant summary judgment if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

### III. DEFENDANT BYRD'S MOTION FOR SUMMARY JUDGMENT [64]

**A.**   ***Title VII***

   *1.    Title VII "Employer"*

First, Defendant Byrd argues that, in his individual capacity, he is not Plaintiff's "employer" for Title VII purposes. "An 'employer' under Title VII is a 'person in an industry affecting commerce who has fifteen or more employees . . . .'" *Oden v. Oktibbeha County*, 246 F.3d 458, 465 (5th Cir. 2001) (quoting 42 U.S.C. § 2000e(b)).

2

This definition "includes one or more individuals, governments, governmental agencies, [or] political subdivisions . . . ." 42 U.S.C. § 2000e(a). Accordingly, a supervisor may be "considered an 'employer' under Title VII if he wields the employer's traditional rights, such as hiring and firing." *Huckabay v. Moore*, 142 F.3d 233, 241 (5th Cir. 1998). However, if Defendant Byrd exercises such power as a public official, it "is necessarily exercised . . . by a person who acts as an agent of the corporate or municipal body he represents. Because the wrongful acts are performed in his official capacity, any recovery . . . must be against him in that capacity, not individually." *Id.*[1] Therefore, Defendant Byrd can not be liable under in his individual capacity under Title VII.

2.      *Sexual Harassment – Quid Pro Quo*

"To establish a Title VII quid pro quo claim, a plaintiff must show that the acceptance or rejection of a supervisor's alleged sexual harassment resulted in a tangible employment action." *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 772 (5th Cir. 2009). Defendant Byrd argues that Plaintiff suffered no tangible employment action.[2]

---

[1]*See also Oden*, 246 F.3d at 464-65; *Lewis v. Hardy*, 248 F. App'x 589, 592-93 (5th Cir. 2007); *Cutrer v. McMillin*, No. 3:07-CV-701-TSL-JCS, 2008 U.S. Dist. LEXIS 53393, at *3-*4 (S.D. Miss. July 14, 2008); *Jordan v. Miss. State Dep't of Health*, No. 3:06-CV-233-WHB-LRA, 2007 U.S. Dist. LEXIS 60317, at *9-*11 (S.D. Miss. Aug. 16, 2007); *Broussard v. Lafayette Consol. Gov't*, 45 F. Supp. 3d 553, 579 (W.D. La. 2014); *Gallentine v. Hous. Auth.*, 919 F. Supp. 2d 787, 796 (E.D. Tex. 2013).

[2]In his reply brief, Byrd also argued that Plaintiff provided no evidence of a causal connection between the alleged employment actions and her rejection of his alleged sexual advances. The Court does "not consider arguments raised for the first time in a reply brief . . . ." *United States v. Transocean Deepwater Drilling, Inc.*, 767 F.3d 485, 492 (5th Cir. 2014).

In response, Plaintiff contends that Byrd removed her from the "Explorers" program, transferred her from Pascagoula to the sub-station in Ocean Springs, and threatened to demote or fire her.

"A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* "A tangible employment action in most cases inflicts direct economic harm." *Faragher v. City of Boca Raton*, 524 U.S. 775, 790-91, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998).

"Where . . . lateral reassignment constitutes the claimed adverse employment action, the surrounding circumstances are considered." *Vicknair v. La. Dep't of Pub. Safety & Corr.*, 555 F. App'x 325, 331 (5th Cir. 2014). The Court should consider factors such as a reduction in salary, a loss of standing with fellow employees, a decrease in benefits, loss of prestige, and decreased responsibilities. *Id.* An "undesirable reassignment" may constitute a "tangible employment action" in this context, *Burlington Indus. v. Ellerth*, 524 U.S. 742, 765, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998), but the plaintiff must present evidence that the prior position "was objectively superior so that . . . reassignment could be considered a demotion." *Alaniz*, 591 F.3d at 772-73.

First, threats of termination or demotion are not tangible employment actions and, therefore, are not actionable as a quid pro quo claim. *See Ellerth*, 524 U.S. at 760–66; *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 268-69 (5th Cir. 1998); *Ross v. Wald Moving & Storage Servs.*, No. 98-21046, 1999 U.S. App. LEXIS 39811, at *11-

*12 (5th Cir. Aug. 16, 1999).

Next, Plaintiff admits that she did not suffer a decrease in salary or benefits when Defendant Byrd transferred her to the Ocean Springs sub-station. Likewise, she provided no evidence that the transfer altered her duties, or that Ocean Springs is a less desirable or prestigious duty station. Therefore, she provided no evidence that the transfer was a "tangible employment action." *See Alaniz*, 591 F.3d at 772-73 (where plaintiff was reassigned but her salary, benefits, and duties remained unchanged, and she presented no evidence that the former position was "objectively superior" to the new one, she suffered no tangible employment action); *Watts v. Kroger Co.*, 170 F.3d 505, 510 (5th Cir. 1999) (expanding an employee's duties to include extra work was not a "tangible employment action"); *Williams v. Barnhill's Buffet Inc.*, 290 F. App'x 759, 762 (where waitress was assigned to "bad part" of restaurant and required to wash a wall where servers dumped food, there was no tangible employment action). Likewise, Plaintiff provided no evidence indicating that her removal from the "Explorers" program resulted in "significantly different responsibilities" or could objectively "be considered a demotion." *Alaniz*, 591 F.3d at 772-73.

For these reasons, the Court finds that Plaintiff presented no evidence of a "tangible employment action" as contemplated by the Fifth Circuit's quid pro quo jurisprudence.

### 3.    *Sexual Harassment – Hostile Work Environment*

"A hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive

to alter the conditions of the victim's employment and create an abusive working environment." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009). Where, as here, "the claim of harassment is against a supervisor, proving a hostile working environment requires four elements: (1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; and (4) that the harassment affected a term condition, or privilege of employment." *Id.* at 330 (punctuation omitted). Defendant Byrd argues that Plaintiff can not prove the second, third, and fourth elements.

### a.    Unwelcome Sexual Harassment

Plaintiff broadly testified that Defendant Byrd "always made comments," that "numerous incidents happened," and that Byrd made comments to her "on a daily basis . . . ." More specifically, she testified that in September 2012, Byrd "got right up in [her] face" where she "could feel his breath" and said, "You know you want to kiss me." She also testified that, on another occasion, he "rub[bed] his hand all the way up [her] inner thigh" and said "he wanted to 'taste her p—y.'" Plaintiff alleges that Defendant Byrd responded to her rejections of his advances by saying "I gave you sergeant and I can take it away." She testified that Byrd's behavior "disgusted" her, that she would hide from him, and that his advances and implicit threats caused her a significant amount of emotional pain. This testimony is sufficient to create a genuine factual dispute as to the second element of a hostile work environment claim. *Id.*; *Lauderdale v. Tex. Dep't of Crim. Justice*, 512 F.3d 157, 163 (5th Cir. 2007) (second element satisfied by "discourteous conduct of a sexual nature"); *Jones v. Flagship Int'l*, 793 F.2d 714, 720

(5th Cir. 1986) ("sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome in the sense it is unsolicited or unincited and is undesirable or offensive to the employee").

####    b.    **Based on Sex**

The testimony cited above is also sufficient to create a genuine factual dispute as to whether the alleged harassment was "based on sex." *Stewart*, 586 F.3d at 330.

####    c.    **Severe or Pervasive**

"To affect a term, condition, or privilege of employment, sexual harassment must be sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment." *Id.* "The harassment must consist of more than simple teasing, offhand comments, and isolated incidents (unless extremely serious). Relevant factors are the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Royal v. CCC&R Tres Arboles, LLC*, 736 F.3d 396, 401 (5th Cir. 2013). The "conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceives it to be so." *Stewart*, 586 F.3d at 330. The Court should consider the "totality of the circumstances," including "previous conduct to illuminate currently actionable issues . . . ." *Id.* at 330-31.

As noted above, Plaintiff testified that Defendant Byrd made harassing comments to her "on a daily basis . . ." for months. She specifically testified that on one

occasion he "got right up in [her] face" where she "could feel his breath" and said, "You know you want to kiss me." On another occasion, he allegedly "rub[bed] his hand all the way up [her] inner thigh" and said "he wanted to 'taste her p—y.'" These events allegedly occurred when they were alone, and she testified that he frequently threatened her with demotion, stating "I gave you sergeant and I can take it away."

When considered in the context of an employer-employee relationship and the power that Byrd wielded as Sheriff, the behavior alleged by Plaintiff could reasonably be interpreted as physically threatening. The thigh-rubbing incident seems particularly threatening, and its severity is magnified by the comment which allegedly accompanied the physical contact. Plaintiff testified that Byrd made sexual comments on a daily basis, that she had to hide from him to avoid harassment, that she routinely cried on the way to work, and that it was not uncommon for her to cry at work. She testified that she was afraid he would follow through with his threat to retaliate against her for her refusal to succumb to his sexual advances.

"Deliberate and unwanted touching of . . . intimate body parts can constitute severe sexual harassment." *Cherry v. Shaw Coastal, Inc.*, 668 F.3d 182, 189 (5th Cir. 2012). In the Court's opinion, Plaintiff's testimony is sufficient to create a genuine factual dispute as to whether Byrd's alleged conduct was severe or pervasive enough to alter the terms, conditions, or privileges of Plaintiff's employment. *See, e.g. Royal*, 736 F.3d at 401-03 (coworkers hovering over plaintiff and making sexual comments were sufficient to create a genuine dispute of material fact as to "severe or pervasive" determination); *EEOC v. Boh Bros. Constr. Co., LLC*, 731 F.3d 444, 461-62 (5th Cir.

2013) (sex-based epithets two to three times per week was sufficient evidence to support a jury's conclusion that sexual harassment was severe or pervasive); *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 483 (5th Cir. 2002) (a single instance of anal touching was sever enough to create factual dispute); *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (5th Cir. 1996) (frequent comments were sufficiently severe or pervasive to create a hostile work environment).

### d.   *Ellerth/Faragher* Defense

Defendant Byrd argues that he should receive the protection of the *Ellerth/Faragher* defense. "Under this defense, an employer will not be vicariously liable for harassment by a supervisor if it can show: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer to avoid harm otherwise." *Boh Bros.*, 731 F.3d at 462.

Although it is undisputed that the Department had a workplace harassment policy and reporting procedure [62-4], Sheriff Byrd himself was the alleged harassing party. The record contains evidence that Byrd committed – and, therefore, had knowledge of – these actions for months without taking any remedial measures. Therefore, if Byrd is Plaintiff's Title VII employer, there are genuine disputes of material fact regarding the first element of the *Ellerth/Faragher* defense.

As for the County, a "Title VII employer has actual knowledge of harassment that is known to 'higher management' or to someone who has the power to take action

to remedy the problem." *Sharp v. City of Houston*, 164 F.3d 923, 929 (5th Cir. 1999). "[T]o be considered a 'manager,' a person must have the ability to exert control over employees." *Id.* "This includes someone with the power not only to hire and fire the offending employee but also to take disciplinary action, to provide significant input into employment decisions, to instruct the offending employee to cease the harassing behavior, or to implement other means of taking remedial action." *Id.* "[T]he key to whose knowledge may be imputed to the employer is remedial power: There is no actual knowledge until someone with authority to address the problem is notified." *Id.* at 930.

The Mississippi legislature provided sheriffs complete authority in their employment decisions: "Every sheriff shall have power to appoint one or more deputies to assist him in carrying out the duties of his office, . . . to remove them at pleasure, and to fix their compensation, subject to the budget for the sheriff's office approved by the county board of supervisors." MISS. CODE ANN. § 19-25-19. Therefore, Defendant Byrd qualifies as a person with "authority to address the problem," and his knowledge of the alleged harassment is imputed to the County. *Sharp*, 164 F.3d at 930. Accordingly, if the County is Plaintiff's employer, there are genuine disputes of material fact regarding the first element of the *Ellerth/Faragher* defense.

### 4.   *Retaliation*

To establish a prima facie case of retaliation, a plaintiff must prove that (1) she participated in an activity protected by Title VII; (2) her employer took an adverse action against her; and (3) a causal connection exists between the protected activity

and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007).

Here, Plaintiff apparently contends that her testimony before the grand jury and EEOC charge of discrimination were "protected activity."[3] Plaintiff testified before the grand jury on August 22, 2013, and according to her Amended Complaint [25], she filed an EEOC charge on or about December 20, 2013. According to Plaintiff's own testimony [67-1] and time line of events [62-6], all of the alleged adverse employment actions – the sexual comments and advances, the threats of retaliation if she refused, the transfer to Ocean Springs, her removal from the Explorers program – occurred *before* her grand jury testimony and EEOC charge. Therefore, these events could not possibly have caused Defendant Byrd to retaliate against her.

## B.    *42 U.S.C. § 1983*

Defendant Byrd argues that the Court should dismiss Plaintiff's Section 1983 claims against him in his official capacity. The Court already dismissed Plaintiff's official-capacity Section 1983 claims against Byrd, in its Memorandum Opinion and Order [28] of August 19, 2014.

## C.    *State-Law Claims*

### 1.    *Sexual Harassment Tort*

Defendant argues that Mississippi does not recognize a tort of sexual

---

[3]Plaintiff may argue that her rejection of Defendant Byrd's sexual advances constituted "protected activity," but the Fifth Circuit has previously rejected this argument. *See LeMaire v. Louisiana*, 480 F.3d 383, 389 (5th Cir. 2007); *Frank v. Harris County*, 118 F. App'x 799, 804 (5th Cir. 2004).

harassment. Plaintiff does not contend otherwise. To the extent Plaintiff asserted a tort of sexual harassment, the Court grants Defendant's motion for summary as to that claim. *See Miller v. N. Miss. Med. Clinics, Inc.*, No. 1:07-CV-25, 2008 U.S. Dist. LEXIS 49763, at *19 (N.D. Miss. June 30, 2008) (no indication that Mississippi Supreme Court or Fifth Circuit would impose liability under state law for sexual harassment); *Smith v. Murphy & Sons, Inc.*, No. 2:06-CV-79, 2007 U.S. Dist. LEXIS 64063, at *33-*34 (N.D. Miss. Aug. 28, 2007) (no Mississippi Supreme Court or Fifth Circuit cases imposing liability under state law for hostile work environment).

### 2.   *Breach of Contract*

Rather than argue in favor of her purported state-law claim for sexual harassment, Plaintiff argues that Defendant Byrd breached her employment contract by violating the Department's policy regarding workplace harassment. However, Plaintiff did not plead a breach of contract claim. The Amended Complaint [25] contains no mention of Plaintiff's employment contract or an alleged breach. "A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Supervisors*, 429 F.3d 108, 113 (5th Cir. 2005).

### 3.   *IIED*

A plaintiff may recover on a claim for intentional infliction of emotional distress "[w]here there is something about the defendant's conduct which evokes outrage or revulsion, done intentionally . . . even there has been no physical injury." *Bowden v. Young*, 120 So. 3d 971, 980 (Miss. 2013). The defendant's conduct "must be so

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* Liability will not attach for mere insults, threats, indignities, petty oppression, annoyances, or other trivialities. *Funderburk v. Johnson*, 935 So. 2d 1084, 1100 (Miss. Ct. App. 2006). Additionally, "[a] claim for intentional infliction of emotional distress will not ordinarily lie for mere employment disputes. Recognition of a cause of action for intentional infliction of emotional distress in a workplace environment has usually been limited to cases involving a pattern of deliberate, repeated harassment over a period of time." *Lee v. Golden Triangle Planning & Dev. Dist., Inc.*, 797 So. 2d 845, 851 (Miss. 2001).

A jury could reasonably conclude that Plaintiff's allegations fall outside the category of "mere employment disputes." *Id.* She testified that Defendant Byrd sexually harassed her on a daily basis for months, and that he threatened to demote her if she did not succumb to his advances. Two specific incidents she recounted could reasonably be interpreted as physically threatening. In the Court's opinion, Plaintiff's testimony is sufficient to create a factual dispute as to whether Defendant Byrd's alleged actions were outrageous and extreme enough to constitute intentional infliction of emotional distress.

**D.   *Damages***

    *1.   Lost Wages / Earning Capacity*

Plaintiff conceded her claims for lost wages and lost earning capacity. Therefore, the Court grants Defendant's motion for summary judgment as to those claims for

damages.

2.    *Punitive Damages – Title VII*

The Civil Rights Act of 1991 "allows plaintiffs asserting a Title VII claim to recover compensatory and punitive damages, provided that recovery is available under § 1981." *Oden*, 246 F.3d at 465 (citing 42 U.S.C. § 1981a(a)). But the "Act precludes plaintiffs from recovering punitive damages against governments, government agencies, and political subdivisions." *Id.* (citing 42 U.S.C. § 1981a(b)). Therefore, the Court grants Defendant Byrd's motion for summary judgment as to Plaintiff's claim for punitive damages under Title VII against him in his official capacity. *See Pollard v. Hinds County Dep't of Human Servs.*, No. 3:13-CV-324-DPJ-FKB, 2014 U.S. Dist. LEXIS 148269, at *9-*10 (S.D. Miss. Oct. 17, 2014); *Barrett v. Miss. Dep't of Pub. Safety*, No. 3:11-CV-185-TSL-JMR, 2013 U.S. Dist. LEXIS 110516, at *18-*19 (S.D. Miss. Aug. 6, 2013).

3.    *Punitive Damages – Section 1983*

As the Court has already dismissed Plaintiff's Section 1983 claims against Byrd in his official capacity, any claim of punitive damages under Section 1983 against him in his official capacity is likewise dismissed.

### IV. JACKSON COUNTY'S MOTION FOR SUMMARY JUDGMENT [62]

**A.    Title VII**

First, the County argues that it is not Plaintiff's employer as defined by Title VII. "Determining whether a defendant is an 'employer' under Title VII . . . involves a two-step process. First, the defendant must fall within the statutory definition.

14

Second, there must be an employment relationship between the plaintiff and the defendant." *Deal v. State Farm County Mut. Ins. Co.*, 5 F.3d 117, 118 n. 2 (5th Cir. 1993); *see also Muhammad v. Dallas County Cmty. Supervision & Corr. Dep't*, 479 F.3d 377, 380 (5th Cir. 2007) (applying 2-part framework from *Deal*).

In relevant part, Title VII defines an "employer" as "a person engaged in an industry affecting commerce . . . and any agent of such a person . . . ." 42 U.S.C. § 2000e(b). "The term 'person' includes one or more individuals, governments, government agencies, [and] political subdivisions . . . ." 42 U.S.C. § 2000e(a). Therefore, Title VII's definition of an "employer" includes individuals, political subdivisions, and their agents. 42 U.S.C. § 2000e(a)-(b). The County is a political subdivision, and it falls within the statutory definition.

Next, "in determining whether an employment relationship exists within the meaning of Title VII . . . , we apply a 'hybrid economic realities/common law control test.'" *Deal*, 5 F.3d at 118-19.

> The right to control an employee's conduct is the most important component of this test. When examining the control component, we have focused on whether the alleged employer has the right to hire and fire the employee, the right to supervise the employee, and the right to set the employee's work schedule. The economic realities component of our test has focused on whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment.

*Id.* at 119 (punctuation and citations omitted). "Although other factors are relevant, the most important factor is the extent of the employer's right to control the 'means and manner' of the worker's performance." *Bloom v. Bexar County*, 130 F.3d 722, 725-26

(5th Cir. 1997).

While federal law determines whether a person is an "employer" under Title VII, "courts can look to state law to understand the nature of the employment relationship." *Oden*, 246 F.3d at 465. Looking to Mississippi law, the Fifth Circuit held that a Mississippi sheriff was his deputy's "employer" under Title VII. *Id.* (citing MISS. CODE ANN. § 19-25-19). The Court noted that the sheriff was "solely responsible for hiring, promoting, and establishing the deputies' wages." *Id.* Because he "was the official who made all decisions concerning promotions within the Sheriff's Department, he was" the deputy's employer under Title VII, and the Fifth Circuit reversed the district court's Title VII judgment against the county and the sheriff individually. *Id.*

At least one District Judge in this state has applied *Oden* as the County urges – finding that, as a matter of law, the proper Title VII defendant is the sheriff in his official capacity, rather than the county or the sheriff individually. *See Miller v. Choctaw County Sheriff's Dep't*, No. 1:04-CV-96, 2006 U.S. Dist. LEXIS 14649, at *8-*9 (N.D. Miss. Mar. 13, 2006). But in *Rogers v. Humphrey County*, No. 4:09-CV-37, 2009 U.S. Dist. LEXIS 103863, at *2 (N.D. Miss. Oct. 15, 2009), Judge Mills noted the "arguably inconsistent authority relating to the proper defendant in federal cases involving Mississippi sheriff departments." He observed that the general consensus is that Mississippi's sheriff's departments are not "separate governmental entities" capable of being sued, and questioned whether the Fifth Circuit would re-affirm *Oden*. *Id.* at *2-*3 (citing *Porter v. Lowndes County, Miss.*, 406 F. Supp. 2d 708 (N.D. Miss. 2005)).

16

The undersigned judge shares Judge Mills' skepticism regarding *Oden*'s continued precedential value on this issue. While federal law determines whether a person is an "employer" under Title VII, state law illuminates the nature of the employment relationship, *Oden*, 246 F.3d at 465, and the Mississippi Supreme Court has expressly held that sheriff's departments are not amenable to suit under state law as separate entities from their counties. *Brown v. Thompson*, 927 So. 2d 733, 737 (Miss. 2006). Mississippi's federal district judges have consistently applied this principle.[4]

The Fifth Circuit's opinion in *Muhammad v. Dallas County Cmty. Supervision & Corr. Dep't*, 479 F.3d 377 (5th Cir. 2007), provides guidance as to how the Court should apply *Oden*. In *Muhammad*, the Fifth Circuit expressly declined to interpret a prior case, *Clark v. Tarant County*, 798 F.2d 736 (5th Cir. 1986), as holding "that a community supervision and corrections department is, as a matter of law, not a

---

[4]*See, e.g. Whiting v. Tunica County*, 222 F. Supp. 2d 809, 825-26 (N.D. Miss. 2002); *Rollins v. Hattiesburg Police Dep't*, No. 2:14-CV-61-KS-MTP, 2015 U.S. Dist. LEXIS 91315, at *11 (S.D. Miss. July 14, 2015); *Harris v. Jackson Cnty.*, No. 1:14-CV-435-LG-RHW, 2015 U.S. Dist. LEXIS 39472, at *3 (S.D. Miss. Mar. 27, 2015); *Tate v. Sharp*, No. 1:11-CV-268-GHD-DAS, 2014 U.S. Dist. LEXIS 54959, at *23 (N.D. Miss. Apr. 21, 2014); *Allen v. Jackson County*, No. 1:12-CV-57-HSO-RHW, 2013 U.S. Dist. LEXIS 91915, at *2 (S.D. Miss. July 1, 2013); *Wiggington v. Wash. County*, No. 4:12-CV-51-SA-JMV, 2013 U.S. Dist. LEXIS 36912, at *3-*4 (N.D. Miss. Mar. 18, 2013); *Cunningham v. Hinds County Sheriff's Dep't*, No. 3:12-CV-634-CWR-FKB, 2012 U.S. Dist. LEXIS 156623, at *4 (S.D. Miss. Nov. 1, 2012); *Franklin v. Hinds County Sheriff Dep't*, No. 3:12-CV-423-DPJ-FKB, 2012 U.S. Dist. LEXIS 116225, at *4 (S.D. Miss. Aug. 17, 2012); *Dotson v. McBride*, No. 3:12-CV-307-TSL-MTP, 2012 U.S. Dist. LEXIS 85218, at *1 (S.D. Miss. June 20, 2012); *Rogers*, 2009 U.S. Dist. LEXIS 103863 at *2; *Irons v. Coahoma County Sheriff's Dep't*, No. 2:07-CV-184-B-D, 2009 U.S. Dist. LEXIS 66818, at *9-*10 (N.D. Miss. July 30, 2009).

probation officer's Title VII employer." *Muhammad*, 479 F.3d at 381. Instead, the Court observed that it had applied the two-part test articulated in *Deal*, and found that the plaintiffs failed to satisfy its elements. *Id.* (citing *Clark*, 798 F.2d at 747-48). The Court reiterated that the "hybrid economic realities/common law control test is necessarily a fact-specific inquiry . . . ," and it remanded the case to the district court for further factual findings about the "nature and circumstances" of the plaintiff's employment. *Id.* at 382-83.

Here, the parties neither discussed the facts relevant to the Fifth Circuit's "hybrid economic realities/common law control test" nor addressed the "nature and circumstances" of Plaintiff's employment – despite the fact that the Court specifically outlined the *Deal* framework in its previous opinion [28]. Therefore, the Court presently declines to rule on this issue and denies Defendant's motion in that respect.

**B.    *42 U.S.C. § 1983***

The County offered a number of arguments as to why it can not be liable for Byrd's actions under Section 1983.

> A municipality is not liable under § 1983 on the theory of respondeat superior, but only for acts that are directly attributable to it through some official action or imprimatur. To hold a municipality liable under § 1983 for the misconduct of an employee, a plaintiff must show, in addition to a constitutional violation, that an official policy promulgated by the municipality's policymaker was the moving force behind, or actual cause of the constitutional injury. The official policy itself must be unconstitutional or, if not, must have been adopted with deliberate indifference to the known or obvious fact that such constitutional violations would result.
>
> Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise

18

in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy. A policy is official only when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy.

Although an official policy can render a municipality culpable, there can be no municipal liability unless it is the moving force behind the constitutional violation. In other words, a plaintiff must show direct causation, i.e., that there was a direct causal link between the policy and the violation.

A plaintiff must also show that, where the official policy itself is not facially unconstitutional, it was adopted with deliberate indifference as to its known or obvious consequences. Deliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it must amount to an intentional choice, not merely an unintentionally negligent oversight.

Of the moving force and deliberate indifference elements of municipal liability, we have stressed: "These requirements must not be diluted for where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability."

*James v. Harris County*, 577 F.3d 612, 617-18 (5th Cir. 2009) (punctuation and citations omitted).

### 1.   *Constitutional Violations*

First, the County argues that Plaintiff can not prove any constitutional violations occurred insofar as she can not prove the elements of a quid pro quo or hostile work environment claim. "Sex discrimination and sexual harassment in public employment violate the Equal Protection Clause of the Fourteenth Amendment." *Southard v. Tex. Bd. of Crim. Justice*, 114 F.3d 539, 550 (5th Cir. 1997). In this context, "section 1983 and Title VII are parallel causes of action," and the same inquiry applies. *Cervantez v. Bexar County Civil Serv. Comm'n*, 99 F.3d 730, 734 (5th Cir. 1996); *see*

*also Southard*, 114 F.3d at 554; *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

The County presented the same arguments as Defendant Byrd. For the same reasons provided above, the Court finds that Plaintiff presented no evidence of a "tangible employment action" as contemplated by the Fifth Circuit's quid pro quo jurisprudence. However, the Court finds that Plaintiff provided enough evidence to create genuine factual disputes regarding the elements of a hostile work environment claim.

### 2.    *Policy or Custom, Causation, and Byrd's Authority as Policymaker*

As noted above, a municipality can not be liable under Section 1983 simply because it employs a tortfeasor. Rather, the plaintiff must identify a municipal policy or custom that caused the injury. *James*, 577 F.3d at 617. Defendant argues that Plaintiff provided no evidence of a policy or custom which caused her injury. It also argues that it cannot be liable for Defendant Byrd's actions because they exceed his law enforcement authority.

"When a municipality's final policy and decision maker in a single action directly and intentionally deprives a person of a federal constitutional right, . . . the person need not show that a policy or custom caused his injury in order to recover. In such a case, the municipality's action is deemed to be the direct cause or moving force behind the deprivation of right and injury." *Coggin v. Longview Indep. Sch. Dist.*, 289 F.3d 326, 333 (5th Cir. 2002) (citing *Board of County Comm'ners v. Brown*, 520 U.S. 397, 402-04, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)). "To prove liability under the single-

20

incident exception, a plaintiff must at least show (1) that the defendant acted with deliberate indifference by disregarding a known or obvious consequence of his action and (2) that there is a direct causal link between the defendant's action and the deprivation of federal rights." *Waltman v. Payne*, 535 F.3d 342, 350 (5th Cir. 2008).

Defendant Byrd was not only the "final policymaker" for the County's law enforcement decisions. *Waltman*, 535 F.3d at 350. He also possessed complete authority in the Department's employment decisions, subject only to the Board of Supervisors' budgeting power. *See* MISS. CODE ANN. § 19-25-19. "[W]here action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Pembaur v. City of Cincinatti*, 475 U.S. 469, 481, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986); *see also St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988); *Brooks v. George County*, 84 F.3d 157, 165 (5th Cir. 1996); *Doerr v. Sisson*, 563 F. App'x 291, 294 (5th Cir. 2014). Therefore, as Byrd was the County's final decision-maker with respect to the Sheriff's Department's employment decisions, the County may be liable for his actions. Plaintiff's testimony that Defendant Byrd sexually harassed her on multiple occasions creates a genuine factual dispute as to the elements of single-incident municipal liability under Section 1983.

## C. State Law Claims

### 1. IIED

The MTCA waived the City's sovereign immunity "from claims for money damages arising out of torts of . . . governmental entities and the torts of their

employees while acting within the course and scope of their employment . . . ." MISS. CODE ANN. § 11-46-5(1). Plaintiff's claim for intentional infliction of emotional distress is predicated upon sexual harassment. However, this Court, the Mississippi Supreme Court, and the Fifth Circuit "have held that sexual misconduct falls outside the course and scope of employment" of public officials. *Cockrell v. Pearl River Valley Water Supply Dist.*, 865 So. 2d 357, 361-62 (Miss. 2004); *see also Tichenor v. Roman Catholic Church*, 32 F.3d 953, 959 (5th Cir. 1994); *L.T. v. City of Jackson*, 145 F. Supp. 2d 750, 757 (S.D. Miss. 2000); *E.D. v. Pugh*, No. 2:11-CV-43-KS-MTP, 2011 U.S. Dist. LEXIS 126077, at *14-*16 (S.D. Miss. Oct. 31, 2011). Accordingly, the County has not waived its sovereign immunity from liability for Plaintiff's claim of intentional infliction of emotional distress, and the Court grants Defendant's motion for summary judgment as to that claim against the County and Defendant Byrd in his official capacity.

The Court further notes that "an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations." MISS. CODE ANN. § 11-46-5(2). Therefore, the County has likewise not waived its sovereign immunity from liability against Plaintiff's claim for intentional infliction of emotional distress to the extent the claim is predicated upon malicious behavior. *See Idom v. Natchez-Adams Sch. Dist.*, No. 5:14-CV-38-DCB-MTP, 2015 U.S. Dist. LEXIS 91321, *23 (S.D. Miss. July 14, 2015); *Ducksworth v. Rook*, No. 2:14-CV-146-KS-MTP, 2015 U.S. Dist. LEXIS 20563, at *13

22

(S.D. Miss. Feb. 20, 2015); *R.S. v. Starkville Sch. Dist.*, No. 1:12-CV-88-SA-DAS, 2013 U.S. Dist. LEXIS 134264, at *44 (S.D. Miss. Sept. 19, 2013).

### 2.    *Sexual Harassment Tort*

For the same reasons provided above, the Court grants Defendant's motion for summary judgment as to any state-law claim for sexual harassment that Plaintiff may have asserted.

### 3.     *Breach of Contract*

For the same reasons provided above, the Court finds that there is no breach of contract claim properly before the Court.

## D.    *Damages*

### 1.    *Lost Wages/Earning Capacity*

Plaintiff conceded her claims for lost wages and lost earning capacity. Therefore, the Court grants Defendant's motion for summary judgment as to those claims.

### 2.    *Emotional Damages*

Defendant argues that Plaintiff failed to plead that she suffered emotional damages as a result of the actions underlying her Section 1983 claims. However, in her Amended Complaint [25], Plaintiff asserted that all of the actions described therein caused her to suffer emotional damages.

### 3.    *Punitive Damages – 1983*

Defendant argues that Plaintiff can not recover punitive damages from the County or Defendant Byrd in his official capacity under Section 1983. Defendant is correct. "[A] municipality is immune from punitive damages under 42 U.S.C. § 1983."

*Newport v. Fact Concerts*, 453 U.S. 247, 271, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981);

*see also Gil Ramirez Grp., LLC v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 412 (5th Cir.

2015). "An official-capacity claim is, in all respects other than name, to be treated as

a suit against the government entity." *Stern v. Hinds County*, 436 F. App'x 381, 382

(5th Cir. 2011). Therefore, Plaintiff can not recover punitive damages from the County

or Defendant Byrd in his official capacity under Section 1983.

###### 4.   *Punitive Damages – State Law*

Defendant argues that Plaintiff can not recover punitive damages from the

County or Defendant Byrd in his official capacity under state law. Defendant is correct.

The MTCA provides: "No judgment against a governmental entity or its employee for

any act or omission for which immunity is waived under this chapter shall include an

award for exemplary or punitive damages . . . ." MISS. CODE ANN. § 11-46-15(2).

Therefore, Plaintiff can not recover punitive damages from the County or Defendant

Byrd in his official capacity under state law.

## V. CONCLUSION

For the reasons above, the Court **grants in part and denies in part**

Defendants' Motions for Summary Judgment [62, 64].

The Court grants Defendant Byrd's Motion for Summary Judgment [64] as to

any Title VII claim against him in his individual capacity, Plaintiff's retaliation and

quid pro quo sexual harassment claims under Title VII, any purported state-law tort

claim of sexual harassment, Plaintiff's claims for lost wages and lost earning capacity,

and Plaintiff's claim for punitive damages under Title VII. The Court denies Byrd's

motion [64] as to Plaintiff's hostile work environment claim under Title VII and her state-law claim of intentional infliction of emotional distress.

The Court grants Jackson County's Motion for Summary Judgment [62] as to Plaintiff's quid pro quo sexual harassment claim under Section 1983, Plaintiff's claim for intentional infliction of emotional distress against the County and Byrd in his official capacity, any purported state-law tort claim of sexual harassment, Plaintiff's claims for punitive damages under Section 1983 and state law, and Plaintiff's claims for lost wages and lost earning capacity. The Court denies the County's motion [62] with respect to its status as an employer under Title VII, Plaintiff's hostile work environment claim under Section 1983, the County's municipal liability under Section 1983, and Plaintiff's claim for emotional damages under Section 1983.

Finally, the Court declines to address any purported breach of contract, as no such claim is properly before the Court.

SO ORDERED AND ADJUDGED this 5th day of August, 2015.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE