IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**KRISTAN SEIBERT**                                                                                    **PLAINTIFF**

**V.**                                             **CIVIL ACTION NO. 1:14-CV-188-KS-MTP**

**JACKSON COUNTY, MISSISSIPPI,** *et al.*                                          **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

For the reasons provided below, the Court **grants** Defendant Byrd's Motion for Judgment as a Matter of Law, and it **denies** Plaintiff's Motion for Judgment as a Matter of Law or New Trial.

## I. BACKGROUND

The Court provided the factual background of this case in its Memorandum Opinion and Order [83] of August 5, 2015. *Seibert v. Jackson County, Miss.*, No. 1:14-CV-188-KS-MTP, 2015 U.S. Dist. LEXIS 102632, at *1-*2 (S.D. Miss. Aug. 5, 2015). The Court held a jury trial on September 14-16, 2015. The jury returned a verdict [118] in favor of Plaintiff as to her claim of intentional infliction of emotional distress and awarded her $260,000.00 in damages, but it found in favor of Defendants as to Plaintiff's sexual harassment claim. Both Defendant Byrd and Plaintiff filed post-trial motions.

## II. DEFENDANT BYRD'S MOTION [121]

When reviewing a post-trial motion for judgment as a matter of law under Rule 50(b), the Court applies the same standard applied to a motion under Rule 50(a). *Nobach v. Woodland Vill. Nursing Ctr.*, 799 F.3d 374, 377 (5th Cir. 2015). "A motion

for judgment as a matter of law . . . in an action tried by a jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *Allstate Ins. Co. v. Receivable Fin. Co. LLC*, 501 F.3d 398, 405 (5th Cir. 2007). "A court should grant a post-judgment motion for judgment as a matter of law only when the facts and inferences point so strongly in favor of the movant that a rational jury could not reach a contrary verdict." *Id.* The Court must "credit the non-moving party's evidence and disregard all evidence favorable to the moving party that the jury is not required to believe." *Carroll v. Ellington*, 80 F.3d 154, 168 (5th Cir. 2015). In other words, "the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses." *Id.* But the Court "will not sustain a jury verdict based only on a mere scintilla of evidence. Although [the Court] draw[s] inferences favorable to the verdict, such inferences must be reasonable and may not rest upon speculation and conjecture." *Allstate*, 501 F.3d at 405.

Defendant Byrd argues that, in light of the jury's explicit finding that he did not sexually harass Plaintiff, there was insufficient evidence to support a verdict in her favor as to intentional infliction of emotional distress. A plaintiff may recover on a claim for intentional infliction of emotional distress "[w]here there is something about the defendant's conduct which evokes outrage or revulsion, done intentionally . . . even though there has been no physical injury." *Bowden v. Young*, 120 So. 3d 971, 980 (Miss. 2013). The defendant's conduct "must be so outrageous in character, and so extreme

in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* Liability will not attach for mere insults, threats, indignities, petty oppression, annoyances, or other trivialities. *Funderburk v. Johnson*, 935 So. 2d 1084, 1100 (Miss. Ct. App. 2006). Additionally, "[a] claim for intentional infliction of emotional distress will not ordinarily lie for mere employment disputes. Recognition of a cause of action for intentional infliction of emotional distress in a workplace environment has usually been limited to cases involving a pattern of deliberate, repeated harassment over a period of time." *Lee v. Golden Triangle Planning & Dev. Dist., Inc.*, 797 So. 2d 845, 851 (Miss. 2001).

Plaintiff testified that on August 13, 2013, a representative of the Jackson County District Attorney's office served her with a subpoena to testify before a grand jury and specifically advised her to keep it secret from her employer. A copy of the subpoena was admitted as Exhibit P-4. Plaintiff testified that it was unusual for the District Attorney to serve a subpoena on an officer in this manner, and that the Department and other officers typically knew if an officer had to testify before the grand jury. Plaintiff testified that she broke down when she received the subpoena because Defendant Byrd was "one of the most powerful people that [she] knew," and she was scared that he would retaliate against her if she testified. Officer Chad Powell testified that he witnessed Plaintiff "crying really hard," "crying hysterically" after she had been served with the subpoena.

According to Plaintiff, she ultimately told the grand jury everything that had allegedly occurred between her and Byrd, "even though [she] didn't want it to come

out." She testified that it made her feel "embarrassed and helpless." District Attorney Anthony Lawrence testified that Plaintiff was upset during her grand jury testimony. He said: "She was crying. She was emotional. She – you could see, I think, the pain on her face;" and "[S]he was crying, she was emotional, she was shaking . . . . It was not a pleasant experience, I can tell you that."

At some point after Plaintiff testified before the grand jury, indictments were released, and the names of those who had testified were made public knowledge. Plaintiff testified that Defendant Byrd came to her office that morning: "And when I looked up, the sheriff was coming down the hall. And he said – he came in my office, and I – I just started shaking because I was so scared, and he said, I guess you hate me, too, and he let me know that he had – that he knew that I had testified in the grand jury, and then he turned around and walked out, and I started crying because I was so upset." Officer Powell corroborated this testimony. He said that Defendant Byrd "come over to the substation, went into [her] office, stayed a brief time. He came out; she came out. She was crying, upset." He described her response to Defendant Byrd's visit as "stressed out, upset, crying . . . ."

Finally, Plaintiff said that after she testified before the grand jury, it became common knowledge in the department that she had done so. She described the impact it had on her relationships with other officers: "I went from talking to most of them to not talking to anybody. A lot of them wouldn't talk to you. They would avoid you;" and "I used to be close – we used to, you know, go places outside of work, like, as a group or, you know, we would have, like . . . sheriff's department events and stuff, but I don't

. . . attend those any more. I don't feel welcome there. There's many times that they – they'll walk right past you and not say anything." However, Plaintiff testified that she received a text message from Captain Mick Sears a couple of months later. Sears confirmed that he sent the text message to Plaintiff and several other officers, and that it read: "In life there are winners and losers. You have to pick a side. If you pick the wrong side, you die."

It is conceivable that the jury credited the testimony cited above and found that Defendant Byrd intentionally inflicted emotional distress upon Plaintiff in retaliation for her testimony before the grand jury, without sexually harassing her. However, the Court notes that Plaintiff only testified as to a single occurrence involving Defendant Byrd unrelated to the alleged sexual harassment – when he allegedly visited her office after the grand jury testimony and said, "I guess you hate me too," letting her know that he knew she had testified. The text message from Captain Sears could reasonably be interpreted as a threat, but Plaintiff provided no evidence that Defendant Byrd had any involvement with it.

Therefore, the Court is left with a single comment from Defendant Byrd that is fairly innocuous on its face, plus Plaintiff's reaction to it. "[T]he standard for intentional infliction of emotional distress is not based on the plaintiff's subjective understanding. To sustain a claim for IIED, some intentional act on the part of the defendant must be outrageous or indecent, not only to the understanding of the intended, but also to civilized society." *McKinney v. Line Constr. Benefit Fund*, No. 1:14-CV-66-NBB-SAA, 2015 U.S. Dist. LEXIS 130296, at *12 (N.D. Miss. Sept. 28,

2015). "Liability does not extend to mere insults, indignities, threats, annoyances, or petty oppressions." *Funderburk*, 935 So. 2d at 1100. No rational juror could view the evidence and conclude that Defendant Byrd's visit to Plaintiff's office after her grand jury testimony – particularly when decoupled from the evidence of sexual harassment which the jury apparently disbelieved – was "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Bowden*, 120 So. 3d at 980. Plaintiff provided no evidence to support her subjective interpretation of the visit as a threat, and she provided no evidence that Byrd otherwise threatened her in response to her grand jury testimony. Accordingly, the Court grants Defendant Byrd's Motion for Judgment as a Matter of Law pursuant to Rule 50(b) as to Plaintiff's claim for intentional infliction of emotional distress.

### III. PLAINTIFF'S MOTION [123]

#### A.   *Rule 50(b)*

First, Plaintiff argues that the Court should enter judgment as a matter of law as to her sexual harassment claim. When a party fails to raise an issue in a Rule 50(a) motion at trial, she waives the right to raise the issue in a Rule 50(b) motion after trial. *Arsement v. Spinnaker Exploration Co., LLC*, 400 F.3d 238, 247 (5th Cir. 2005); *see also Isbell v. DM Records, Inc.*, 774 F.3d 859, 867 (5th Cir. 2014); *Maryland Cas. Co. v. Acceptance Indem. Ins. Co.*, 639 F.3d 701, 707-08 (5th Cir. 2011). This waiver rule is relaxed somewhat if there has only been "technical noncompliance." *Flowers v. S. Reg'l Physician Servs.*, 247 F.3d 229, 238 n. 7 (5th Cir. 2001). "Technical noncompliance . .

. is gauged by whether the purposes of the rule are satisfied. Therefore, if the [movant] made a 50(a) motion at the close of the [non-movant's] case, and the motion sufficiently alerted the court and the opposing party to the sufficiency issue, a court may find a *de minimis* departure and weigh the evidence." *Id.*; *see also Polanco v. City of Austin*, 78 F.3d 968, 974-75 (5th Cir. 1996).

Here, Plaintiff's noncompliance was more than *de minimis*. She made no Rule 50(a) motion at trial or otherwise alerted the Court or Defendant to the purported sufficiency issue. Therefore, she waived the right to move for judgment as a matter of law pursuant to Rule 50(b).

Regardless, the Court notes that Defendant Byrd explicitly denied all of Plaintiff's allegations related to the alleged sexual harassment. "A court should grant a post-judgment motion for judgment as a matter of law only when the facts and inferences point so strongly in favor of the movant that a rational jury could not reach a contrary verdict." *Receivable Fin. Co.*, 501 F.3d at 405. The Court must "credit the non-moving party's evidence and disregard all evidence favorable to the moving party that the jury is not required to believe." *Carroll*, 80 F.3d at 168. Therefore, in light of Byrd's explicit denial that any of the alleged harassment occurred, judgment as a matter of law under Rule 50(b) would be inappropriate.

**B.    Rule 59**

Rule 59(a) provides that the Court "may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." FED. R. CIV. P.

7

59(a)(1)(A). "The rule does not specify what grounds are necessary to support such a decision . . . ." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). Rather, it depends on "the trial court's historic power to grant a new trial based on its appraisal of the fairness of the trial and the reliability of the jury's verdict. . . . A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Id.* at 612-13.

    1.    *Weight of the Evidence*

Plaintiff argues that the Court should order a new trial because the jury's verdict as to her sexual harassment claim was against the weight of the evidence. The Court may grant a new trial on the basis of its belief that the "verdict is clearly contrary to the weight of the evidence." *Id.* at 613. "In making this determination, the district court weighs all the evidence, but need not view it in the light most favorable to the nonmoving party." *Id.* The Court must "respect the jury's collective wisdom," and it may not "simply substitute its opinion for the jury's . . . ." *Id.* But "if the trial judge is not satisfied with the verdict of a jury, he has the right – and indeed the duty – to set the verdict aside and order a new trial." *Id.* A jury's verdict should only be set aside, though, if it "is against the great, not merely the preponderance, of the evidence." *Jones v. Wal-Mart Stores, Inc.*, 870 F.2d 982, 986 (5th Cir. 1989). As long as there is some "evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion." *Indamer Corp. v. Crandon*, 217 F.2d 391, 393 n. 3 (5th Cir. 1954).

As noted above, Defendant Byrd explicitly denied all of Plaintiff's allegations related to the alleged sexual harassment. This case – as noted by the attorneys during opening statements and closing arguments – was a pure "he-said-she-said" situation. Therefore, the Court concludes that the verdict in Byrd's favor as to Plaintiff's sexual harassment claim was not "clearly contrary to the weight of the evidence." *Smith*, 773 F.2d at 613. There was some "evidentiary basis for the jury's verdict," and it was "free to discard or disbelieve whatever facts [were] inconsistent with its conclusion." *Id.*

2. *Contradictory/Inconsistent Verdict*

Next, Plaintiff argues that the Court should order a new trial because the jury's verdict was contradictory insofar as they found in Defendant Byrd's favor as to Plaintiff's sexual harassment claim, but in Plaintiff's favor as to her claim of intentional infliction of emotional distress. "If the jury gives inconsistent answers to special interrogatories, the case must be remanded for a new trial." *Willard v. The John Hayward*, 577 F.2d 1009, 1011 (5th Cir. 1978). A jury's answers are "considered inconsistent, however, only if there is no way to reconcile them. The test is whether the jury's answers can be said to represent a logical and probable decision on the relevant issues as submitted." *Id.*

The jury's verdict was not contradictory insofar as they could have concluded that Defendant Byrd did not sexually harass Plaintiff, but that he did retaliate against her for testifying before the grand jury. However, as the Court has granted Defendant's Motion for Judgment as a Matter of Law [121] as to Plaintiff's claim of intentional infliction of emotional distress, this argument is moot.

9

*3.     Instructions*

Plaintiff argues that the Court erred by not giving the jury her proposed instruction P-17, which provided: "The Court instructs the Jury that a single decision by a final policy maker responsible for the activity alleged creates municipal liability." Plaintiff argues that the absence of this instruction confused the jury with regard to the law governing her sexual harassment claim.

This argument is unavailing. First, because the jury found that Plaintiff was not sexually harassed, any error in the Court's instructions regarding municipal liability for sexual harassment was harmless. Second, jury instructions "must be considered as a whole, and so long as the jury is not misled, prejudiced, or confused, and the charge is comprehensive and fundamentally accurate, it will be deemed adequate . . . ." *Concise Oil & Gas Partnership v. La. Intrastate Gas Corp.*, 986 F.2d 1463, 1474 (5th Cir. 1993). Here, the Court instructed the jury as to the requirements for municipal liability, and it explicitly instructed the jury that Defendant Byrd "was the final decision and policy-maker for defendant Jackson County, Mississippi's law enforcement decisions and in the sheriff's department's employment decisions." Therefore, even if the jury had found that Plaintiff was sexually harassed, they received adequate instructions as to municipal liability for such harassment.

*4.     Quid Pro Quo*

Finally, Plaintiff argues that the Court should grant a new trial as to her *quid pro quo* harassment claim. The Court granted Defendants' Motions for Summary Judgment [62, 64] as to Plaintiff's *quid pro quo* claim. Plaintiff did not seek

10

reconsideration of the Court's ruling under either Rule 59(e) or Rule 60(b). Likewise, she did not list a *quid pro quo* claim in the Pretrial Order [109]. Accordingly, the parties proceeded to trial on a hostile working environment theory.

Once a pretrial order is entered, it "supersede[s] all prior pleadings and control[s] the subsequent course of the action." *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474, 127 S. Ct. 1397, 167 L. Ed. 2d 190 (2007) (quoting FED. R. CIV. P. 16(e)). "If a claim or issue is omitted from the order, it is waived, even if it appeared in the complaint." *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 604 (5th Cir. 2000). Accordingly, the Court finds that Plaintiff waived her *quid pro quo* claim.

## IV. CONCLUSION

For the reasons provided below, the Court **grants** Defendant Byrd's Motion for Judgment as a Matter of Law, and it **denies** Plaintiff's Motion for Judgment as a Matter of Law or New Trial.

SO ORDERED AND ADJUDGED this 9th day of December, 2015.

> *s/Keith Starrett*
> UNITED STATES DISTRICT JUDGE